HARRIS, Plaintiff in error, v. STATE, Defendant in error.†

*No. 75–893–CR.   Argued February 2, 1977.—Decided June 1, 1977.*
(Also reported in 254 N.W.2d 291.)

† Motion for rehearing denied, without costs, on July 19, 1977.

358

For the plaintiff in error the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Maryann S. Calef,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   The plaintiff in error, Governor Harris (defendant) was convicted after a jury trial on one count of abduction contrary to sec. 940.32(3) Stats. (1973) as a party to a crime, sec. 939.05; Stats.[1] a second count of sexual perversion contrary to sec. 944.17(1), as a party to a crime; a third count of sexual perversion; and a fourth count of obstructing an officer contrary to sec. 946.41(1).[2] The action was commenced by the filing of a criminal complaint on May 1, 1975 and trial took place August 18, 19 and 20, 1975. Defendant was sentenced to indeterminate maximum terms on each count, up to fifteen years on abduction, five years on each sexual perversion count, and one year for obstructing an officer. Count two was made consecutive to count one; counts three and four were made concurrent

[1] "939.05 *Parties To Crime.* (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act."

[2] "946.41 *Resisting Or Obstructing Officer.* (1) Whoever knowingly resists or obstructs an officer while such officer is doing any act in his official capacity and with lawful authority, may be fined not more than $500 or imprisoned not more than one year in county jail or both."

to count one, for a total incarceration of not more than twenty years.

Writs of error are directed to the judgment of conviction and the order denying plaintiff in error's motion for a new trial and for reduction of sentence.

The questions raised are:

1. Whether the defendant could be separately charged and convicted of both sexual perversion and abduction?

2. Whether the prosecution's calling to the witness stand of counsel for co-defendant to impeach a defense witness was prejudicial error?

3. Was the sentence an abuse of discretion?

4. Did the lower court err in failing to credit pre-conviction jail time against all counts?

On the evening of April 30, 1975, according to the evidence of the state, a seventeen year old girl left her home in the city of Milwaukee at approximately 8:00 p.m. to visit a friend. Near her home, two men jumped out of an automobile and forced her into the car. The two men were Governor Harris, and co-defendant-below James Gardner, who is not before the court on this review. The three rode around for approximately one hour, the men forcibly detaining the girl and beating her about the body. When they stopped, the girl was forced to commit acts of oral sodomy on each man. The police arrived moments later and the two men were arrested.

Harris (and co-defendant Gardner) denied this version of events in every relevant detail. They testified the girl was a willing occupant in the car, seeking a good time like they were, and that no sexual activity took place. The jury did not believe this version, and convicted the two men on each count.

Testimony at the three day trial is as follows.

The girl testified that as she crossed the street near her home a car turned into the street and an occupant asked her if she wanted a ride. She said she did not.

The occupant kept insisting whereupon the two men got out of the car "real fast." They "rushed and they grabbed me and hit me, then I started screaming, trying to break loose." She was forced into the car.

The girl was put between the two men in the front seat and as they drove they hit her and looked through her purse, from which they took two packages of cigarettes. She asked to be let out. They refused. They drove around downtown Milwaukee between forty-five and ninety minutes.

The men talked about "getting high" and having some fun. They put their hands on the girl's breasts, down her blouse and pants, and they pinched her. They drove into an alley where one of the defendants said a friend lived who would have "some dope, some high." But he discovered his friend wasn't there and they started to hit her again.

The girl faked an asthma attack. One man rolled down a window. The girl started blowing the horn, screaming and fighting, but finally she gave up and did what they asked. One man wanted to have intercourse with her but the other said that would "leave evidence." The two men then forced the girl to commit fellatio on both of them. One of the men saw someone approach and said, "Hey man, it's the dope man, he's here." However, it was the police.

At some time after 10:00 p.m. acting detective Morris Merriweather heard a radio dispatch to check for two men attempting to drag a woman into an automobile. A description of the car and its license was put out on the radio. The detective was southbound on 19th Lane when he observed the car matching the description given on the radio. The car was parked in a vacant lot with its lights out. He then saw Harris exit the passenger side of the automobile and walk hurriedly onto the porch of a nearby house and knocked on the door. The detective approached,

stated he was a police officer and asked Harris to identify himself. Harris said his name was Calvin Brazil and he was there to visit a girl friend in the house. Acting detective Merriweather noticed Harris' trousers were unbottoned on top and his zipper was unzipped. While they talked the girl exited the automobile crying and screaming and said they had forced her to commit oral sodomy on them. The detective said the girl was bruised, with scratches on the upper part of her body. He and his partner then arrested Harris and Gardner.

Other officers arrived at the scene. Vice squad officer Richard Tarczynski found liquid splattered on the floor mat. At the police garage he had the mat removed and took a swatch of the flooring (also described as carpet) to a police chemist who examined the liquid and testified at trial that he had observed under the microscope the presence of spermatozoa. He said he had no way of knowing how long the substance had been on the swatch.

Vice squad officer Donald Pedersen testified Harris did not give the police his real name until about three hours after he had been taken to the police station. This was the source of the obstructing an officer charge.

The girl's mother testified she had custody of the girl, and she did not give the two men permission to take her daughter anywhere.

Both Governor Harris and James Gardner testified in their own defense. Their testimony was substantially similar. He testified he was en route with Gardner to visit a friend named Becky to deliver a message when the girl ran across the street waving her hands for the car to stop. Her eyes were blackened and her blouse was torn. She asked Gardner to take her to her girl friend's house. When the three arrived, the girl left the car and went to the door of the house, but then returned to the car after learning her friend's husband was home. The three then went to various addresses in search of friends

and marijuana. Both Harris and Gardner denied engaging in any kind of sex acts with the girl. They encountered Clarence "Buck" Gilbert who they hoped had marijuana.

Clarence Gilbert testified for the defense. He stated the three stopped by his house. The girl was sitting in the back seat. She did not try to get out of the car. The girl told him she had been beaten up by her boyfriend.

Sandra Laster, age fourteen, testified that at about 8:00 p.m. on April 30, a lady matching the description of the alleged victim rang the doorbell of her home and asked if a Brenda lived there. Alfreda Simmons, age seventeen, lived in the lower portion of the duplex where Sandra Laster lived. She also testified she remembered a girl searching for someone named Brenda.

The testimony of these two persons, Sandra Laster and Alfreda Simmons, supported the defendants' story that their female passenger was unrestrained.

One source of alleged error concerned the witness stand testimony of James Gardner's defense counsel. In chambers, defense attorney Ronald Davis, representing James Gardner, sought permission of the court to have Ms. Simmons attempt an in-court identification of the girl (the victim) who allegedly came to Ms. Simmons' door looking for Brenda. Attorney Davis revealed that in the hallway outside of the court room he had asked Miss Simmons if the alleged victim also in the hall, was the girl who had called at her door. Ms. Simmons said yes.

Later on the witness stand, Miss Simmons was asked if attorney Davis had pointed out the victim in the hallway. She answered, "He didn't point at the girl. I was the one that pointed out to the girl." Still later, the prosecution sought to impeach Ms. Simmons with the transcribed in-chambers statement of Attorney Davis.

The defendant argues the automobile in which the beating and the forced sexual acts took place was "merely

the situs" of the criminal conduct for which he was charged. The primary force, he alleges occurred "just prior" to the act of fellatio "and clearly appears incident thereto." For these reasons, abduction was "merely incidental" to the acts of perversion and should not have been separately charged. This argument is not convincing. It is premised on allegations of fact obviously disbelieved by the jury. It ignores settled case law. It was not raised below or in the motion for a new trial.

The premise that the force employed by Harris and his male companion was only incidental to the sex acts is simply unsupported in the record construed favorably to the verdict. According to the victim's testimony, she was beaten continuously from the moment she was grabbed until moments before she was freed when the police arrived. Her mother and several police officers testified she was bruised about the face, her blouse was torn and the upper portion of her body scratched.

It is the law of this state the same criminal act may constitute different crimes with similar but not identical elements. "In other words, if any of the elements of proof required are different in the crimes charged, then they may be considered separate crimes." *Melby v. State,* 70 Wis.2d 368, 381, 234 N.W.2d 634 (1975); *Accord: Hebel v. State,* 60 Wis.2d 325, 328, 210 N.W.2d 695 (1973); *Driscoll v. Schmidt,* 354 F. Supp. 1225, 1228 (W.D. Wis. 1973); *State v. Zdiarstek,* 53 Wis.2d 776, 786, 193 N.W.2d 833 (1972).

Sec. 940.32(3), Stats. (1973) provides:

"940.32 *Abduction.* Whoever, for any unlawful or immoral purpose, does any of the following may be imprisoned not more than 15 years:

". . .

"(3) By force or threat of imminent force, detains any child under 18 years of age who is away from his home or the custody of his parent or guardian."

The crime of sexual perversion, 944.17 Stats., (1973) states in relevant part:

"*Sexual perversion.* Whoever does either of the following may be fined not more than $500 or imprisoned not more than 5 years or both:
"(1) Commits an abnormal act of sexual gratification involving the sex organ of one person and the mouth or anus of another; or. . . ."

It is obvious that whereas abduction requires an unlawful or immoral purpose (such as committing a battery upon the victim), the threat or actual use of force, and a victim under eighteen years of age away from his home or the custody of his parent or guardian, sexual perversion requires an entirely different element of specified sexual conduct. Under the circumstances of this case the charge and conviction for both crimes was proper.

The defendant refers to cases dealing with the interrelation of kidnapping and other crimes committed during the act of carrying away or confinement. *People v. Daniels,* 80 Cal. Rptr. 897, 459 P.2d 225 (1969) ; *People v. Levy,* 15 N.Y.2d 159, 204 N.E.2d 842 (1965), 256 N.Y.S.2d 793, *cert. den.* 381 U.S. 938. In *Daniels,* defendants faced the death penalty after conviction under a robbery-kidnapping statute which forbade kidnapping or carrying away any individual to commit robbery. The defendants were also charged with rape. The facts supporting the kidnapping charges indicated the defendants had briefly moved their victims from one room to another in the victims' own homes, for distances of not more than thirty feet. The court held the legislature did not intend its kidnapping statute to cover this conduct.

*Levy* also involved interpretation of a different statutory crime in a different state. The case held that kidnapping was limited to " 'kidnapping' in the conventional

sense." The victims in *Levy*, husband and wife, were forcibly transported in their own car twenty-seven blocks over a period of twenty minutes while being robbed. *Levy* does not persuade us to abandon our rule regarding liability for more than one crime arising out of a single act.[3]

The state advances an additional reason for rejecting Harris' argument. If the police had knocked on the defendant's car window a few minutes before instead of a few moments after the victim was forced to perform the acts of perversion, defendants Harris and Gardner could still have been charged with abduction, carrying a maximum fifteen year penalty, but not with sexual perversion, which has a five year maximum. Under defendant's theory, the sex act had the effect of diminishing the defendant's liability. *See,* for a similar point, *Aspects of Merger In The Law of Kidnapping,* 55 Cornell L. Rev. 527, 533 (1969–70).

We conclude that the conviction on both the abduction and perversion counts was not error.

The court is next urged to hold the abduction statute is unconstitutionally vague. It is said men of common intelligence must necessarily guess as to the meaning of "detain" in sec. 940.32 Stats., when referred to in contradistinction to the similar words "confines" and "restrains" under sec. 940.30 Stats., false imprisonment, and "seizes," "carried" and "confines" and "restrains" under sec. 940.31 Stats., kidnapping. The answer to this proposition is that a person does not have a constitutional right to know with certainty which crime, among several, he is committing, at least until the prosecution makes its determination. "A person subject to being charged with two crimes or a crime and a civil penalty is not entitled to know in advance exactly what the conse-

---

[3] *Levy* now has only limited vitality in its own state. *People v. Rodriguez,* 383 N.Y.S.2d 17, 18 (App. Div. 1976).

quences of his act shall be by any requirement of due process. *State v. Coubal,* 248 Wis. 247, 21 N.W.2d 381 (1946) . . ." *State v. Roggensack,* 15 Wis.2d 625, 633, 113 N.W.2d 389, 114 N.W.2d 459 (1962).

But defendant also asserts that the coexistence of the abduction, kidnapping and false imprisonment statutes gave the prosecutor excessive leeway in his charging decision. Sec. 939.65, Stats., provides:

> "*Prosecution Under More Than One Section Permitted.* If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions."

This court has recently discussed the considerable discretion with which a prosecuting attorney is cloaked. In *State v. Johnson,* 74 Wis.2d 169, 173, 246 N.W.2d 503 (1976), the court said that the district attorney has great discretion in determining whether or not to prosecute; it follows that he may exercise this discretion in determining which of several related crimes he wishes to charge defendant committed.

The case of *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed.2d 110 (1972), cited by the defendant, concerned a vaguely worded vagrancy ordinance which makes criminal "activities which by modern standards are normally innocent." 405 U.S. at 163. *Papachristou* has no bearing on the case at bar.

The next issue raised by defendant is whether the calling of Attorney Davis, who was counsel for co-defendant Gardner, was reversible error. Mr. Davis, who was the final witness at the trial, was called to contradict defense witness Alfreda Simmons' statement that Davis did not point out the alleged victim in the hall outside the courtroom.

We conclude the calling of Davis was improper, but not prejudicial. As a general matter, the roles of witness

and advocate are inconsistent and a practice this court has discouraged. *Rude v. Algiers,* 11 Wis.2d 471, 482, 105 N.W.2d 825. *Peterson v. Warren,* 31 Wis.2d 547, 143 N.W.2d 560, 569 (1966). Ethical Consideration 5–9 of the Code of Professional Responsibility states why:

"If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

Weighed against the limited value of the attorney's testimony for finding truth, was the unseemly and confusing spectacle of putting the personal veracity of an officer of the court into issue in the proceedings.

Whether a lawyer should testify in a trial in which he is an advocate is a matter for the trial court's discretion; in light of the strong and sensible policies against mixing these roles, however, the answer should usually be no, especially where the value of the testimony is small, or collateral to the ultimate issues.[4]

Mr. Davis' testimony did not prevent Harris from obtaining a fair trial however. The testimony was brief and collateral; it tended to corroborate and not to impeach the defense witness Ms. Simmons.

---

[4] When the possible mixing of roles is foreseeable the Code of Professional Responsibility puts on the lawyer himself the responsibility of avoiding the situation. In certain situations, moreover, he must withdraw from the litigation even if the situation was not foreseen. DR 5–102. There is nothing in the record here to indicate that Mr. Davis could have foreseen his role as a witness.

Sentence of the court is attacked because it is alleged there was no proper showing probation should not be the sentence; the sentence was not individualized and reasoned; no presentence report was ordered; and a legislative committee has recommended changes be made in the penalty for abduction.[5] The sentencing standard of review was stated in *McCleary v. State*, 49 Wis.2d 263, 278, 182 N.W.2d 512 (1971):

"We have frequently stated that we will remand for sentencing or modify the sentence only when an abuse of discretion clearly appears. By this we mean that this court should review and reconsider an allegedly excessive sentence whenever it appears that no discretion was exercised in its imposition or discretion was exercised without the underpinnings of an explained judicial reasoning process. Where the judicial sentencing discretion is exercised on the basis of clearly irrelevant or improper factors, an abuse of discretion also results."

In this case the record reveals the trial court was concerned with society's need for protection from violent crime; the need for deterrence and the aggravated ("heinous, vicious") nature of the offenses, and what it believed to be a bad faith defense. Defense counsel argued that Harris was twenty-two, had only two convictions, for possession of marijuana and non-support, and had recently married with the court's permission.

The question whether the trial court abused its discretion is treated "in light of a strong policy against

---

[5] Senate Bill 14, 1975 would reduce the maximum penalty for abduction to ten years and $10,000. This bill proposes a comprehensive restructuring and revision of all criminal sentences. The bill died when the 1975 legislative session ended and has been reintroduced in the 1977 session by the Legislative Council. However, Senate Bill 14 was not the law at the time of sentencing. The senate bill in this context is not relevant to the sentencing decision.

interference with the discretion of the trial court in passing sentence." *Ocanas v. State,* 70 Wis.2d 179, 183, 233 N.W.2d 457 (1975). There is a presumption that the trial court acted reasonably and the defendant must show some unreasonable or unjustifiable basis in the record for the sentence complained of. *State v. Killory,* 73 Wis.2d 400, 408, 243 N.W.2d 475 (1976). *Brozovich v. State,* 69 Wis.2d 653, 655, 230 N.W.2d 639 (1975).

This court has encouraged the use of presentence investigations and reports but has also stated that they are not necessarily required. *Bruneau v. State,* 77 Wis.2d 166, 174, 252 N.W.2d 347 (1974); *Sprang v. State,* 63 Wis.2d 679, 686, 218 N.W.2d 304 (1974); *Krebs v. State* 64 Wis.2d 407, 421, 219 N.W.2d 355 (1974). *State v. Schilz,* 50 Wis.2d 395, 401–403, 184 N.W.2d 134 (1971). The trial judge said he did not think a presentence investigation would serve any useful purpose. Appellate counsel does not call to this court's attention any factors concerning the defendant which are relevant to the sentencing decision but which were not called to the sentencing court's attention.

The court did not abuse its discretion in refusing to order a presentence report. This court has often deferred to the discretion of the trial court, in part, because the judge below is able to assess the demeanor of those who appear before him. Comment reflecting on the veracity of the defendant and his witnesses is no more than an articulation of this reasoning process. *Schilz, supra,* 50 Wis.2d at 403. The trial judge's appraisal of a defendant's attitude, including the evidence of his veracity at trial, is highly relevant to the exercise of sentencing discretion. *Id., Lange v. State,* 54 Wis.2d 569, 575, 196 N.W.2d 680 (1972); *Knecht v. State,* 68 Wis.2d 697, 699, 229 N.W.2d 649 (1975).

The parties are in accord the trial court erroneously failed to credit the defendant with one hundred and twelve days of preconviction jail time on counts one, three and four, concerning abduction, perversion and obstructing an officer. It appears credit was actually given against count three, and not count two. However, the parties are otherwise correct. At the time of sentencing the law was that preconviction incarceration credit must be applied against each offense for which the maximum penalty was imposed. *Mitchell v. State,* 69 Wis.2d 695, 698–699, 230 N.W.2d 884 (1975); *Byrd v. State,* 65 Wis.2d 415, 222 N.W.2d 696 (1974).[6] We therefore modify the sentence crediting each count with one hundred and twelve days

*By the Court.*—Judgment and order modified and as modified, affirmed.

---

[6] *Now see, Klimas v. State,* 75 Wis.2d 244, 248–249, 249 N.W.2d 285 (1977) prospectively holding that all pre-sentence confinement because of indigency must be applied toward the diminution of the sentence imposed, regardless of whether that sentence is the maximum allowable.