WILSON, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–028–CR. Argued March 8, 1978.—Decided April 5, 1978.*
(Also reported in 264 N.W.2d 234.)

For the plaintiff in error the cause was argued by *Richard M. Sals,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. The defendant, Donald C. Wilson, was charged and found guilty of murder, contrary to sec. 940.01, Stats., and attempted armed robbery, contrary to sec. 939.32 and sec. 943.32(1)(a) and (2). He was sentenced to a mandatory life term for the murder conviction and the maximum fifteen year sentence for the attempted armed robbery conviction, with the sentences to run consecutively. The convictions were affirmed in *Wilson v. State,* 59 Wis.2d 269, 208 N.W.2d 134 (1973).

The orders which the defendant seeks to have reviewed followed proceedings brought under sec. 974.06, Stats. The claim of the defendant is that he was incarcerated prior to trial from April 3, 1971, to October 21, 1971,

because, as an indigent, he was unable to post the necessary bail. The state contests neither the assertion of indigency nor the time claimed for incarceration prior to trial because of the inability to post bail.

The first order to which a writ of error is directed was entered by the circuit court on February 19, 1976. The court in that order denied the motion to credit the time served in the county jail against the terms imposed for first degree murder and attempted armed robbery.

The second order was entered on April 6, 1976, and by that order the court denied the motion that credit be granted on the attempted armed robbery charge for jail time prior to the conviction.

Writs of error to review both orders were issued by this court on June 24, 1976.

The defendant asserts that he is entitled to have the pretrial incarceration period credited as time served on his sentence for first degree murder and also on the consecutive sentence for attempted armed robbery.

The appeal was initially briefed by both the state and the defendant after this court's mandate in *Byrd v. State,* 65 Wis.2d 415, 222 N.W.2d 696 (1974), but prior to the time that this court expanded on the rule of *Byrd* in subsequent decisions. Relying only on *Byrd,* the state originally asserted that the *Byrd* rationale was prospective only and that, therefore, credit was not to be given on Wilson's sentences imposed in 1971. The state acknowledges, however, that this court has now decided in *Klimas v. State,* 75 Wis.2d 244, 249 N.W.2d 285 (1977), that all pretrial and presentence confinement resulting from the defendant's financial inability to make bail is to be credited as time served on a sentence whether or not the presentence confinement, when added to the sentence imposed, exceeds the statutory maximum.[1]  It is also

---

[1] *Klimas* requires that presentence confinement resulting from indigency be credited against the sentence as "time served." This

acknowledged by the state that *Klimas* and *Byrd* were made fully retroactive by this court's decision in *Fitzgerald v. State,* 81 Wis.2d 170, 259 N.W.2d 743 (1977).

Accordingly, the issues posed at the time this case was submitted for oral argument are substantially different than those envisaged by the parties at the time of the filing of the briefs. Irrespective of the fact that Wilson was convicted and sentenced prior to *Byrd,* the state now concedes that he is entitled to some credit for the time served.

Two questions remain which have not been answered by prior decisions of this court. The first is whether one who has been incarcerated prior to trial or sentencing because of his financial inability to post bail can be credited with that time when the sentence subsequently imposed is for a term of life imprisonment. The second question is whether, where consecutive sentences are imposed, the pretrial incarceration time is to be credited to each consecutive sentence or to only one of them.

We conclude that equal protection—the cornerstone of this court's rationale requiring the credit of what once was dead-time—compels the conclusion that presentence incarceration time be credited to the time served on a life sentence for the purpose of determining eligibility for parole.

We also conclude that, where consecutive sentences are imposed, pretrial incarceration time should be credited as time served on only one of such sentences.

Accordingly, we reverse both orders of the trial court and remand the record to the circuit court for the purpose of ascertaining the period of time the defendant Wil-

same confinement time is not, however, "time served" for the purpose of calculating good time credit (Mitchell v. State, 69 Wis.2d 695, 699, 230 N.W.2d 884 (1975)) or for the purpose of imposing a sentence consecutive to one already being served *(Bruneau v. State,* 77 Wis.2d 166, 172, 252 N.W.2d 347 (1977)).

son was confined prior to sentencing because of financial inability to post bail. We further direct that the circuit court credit the time so ascertained in accordance with this opinion. A hearing may be ordered, if the circuit court deems it necessary, to establish the fact of defendant's indigency and the period of time during which he was confined prior to sentencing because of financial inability to make bail.

At oral argument the Assistant Attorney General acknowledged that the rationale of *Byrd, Klimas,* and *Fitzgerald* compels the conclusion that the time in confinement prior to sentencing, because of indigency, operates to reduce *pro tanto* the time period before one sentenced to a term of life imprisonment becomes eligible for parole. We agree that that concession by the state is appropriate, and we so hold.

Time credited on a life sentence is nevertheless necessarily different than a credit made to a sentence which has a maximum determinable term. Our prior cases have focused on the resultant earlier expiration of a sentence when credit is given for presentence incarceration. With regard to a life sentence, however, no earlier expiration date is possible, because the sentence does not expire until the death of the defendant. It has been recognized, however, that a credit for presentence detention has a dual effect. In addition to the earlier expiration of a sentence, the credit also results in earlier parole eligibility. *White v. Gilligan,* 351 F. Supp. 1012 (S.D. Ohio 1972).

The equal protection rationale which has been firmly established by the decisions of this court mandates that the credit be applicable, not only to the expiration date of a sentence, but also to the date of parole eligibility. This is true because, as we pointed out in *Klimas,* the presentence confinement must be considered as time served on the sentence. Were we not to mandate the credit for parole eligibility, a person financially unable to make bail would be required to serve a longer period

of incarceration to be eligible for parole than a non-indigent prisoner who is bailed pending conviction. *See,* Schornhorst, *Presentence Confinement and the Constitution: The Burial of Dead Time,* 23 Hastings L.J. 1041, 1065 (1972).

This rationale has never been considered by this court in respect to a life sentence, but it has been utilized in an analogous situation where there has been a sentence of an indefinite confinement of a prisoner as a sex deviate.

In *Milewski v. State,* 74 Wis.2d 681, 248 N.W.2d 70 (1976), this court recognized that, because there was no ascertainable date for the expiration of the commitment of the sex deviate, the analysis used in *Byrd* was not applicable. Nevertheless, we held that the equal protection rationale required that the prisoner be credited with the presentence detention time resulting from the inability to post bail. The credit in that case was applied as time served to accelerate the date of expiration of the prisoner's maximum term. This expiration date would then serve to trigger a hearing concerning the continuation of his status, in the event a commitment extension were sought, pursuant to sec. 975.13, Stats. The *Milewski* analysis is appropriate here, for the life term—like the sex deviate term—has no ascertainable termination date. We conclude that the defendant, as a matter of equal protection, is entitled to credit for presentence detention for the purpose of calculating the date on which he becomes eligible for parole from his life sentence of first degree murder.

In *Baynor v. Warden, Maryland House of Correction,* 391 F. Supp. 1254 (D. Md. 1975), and in *Wilson v. State of North Carolina,* 438 F.2d 284 (4th Cir. 1971), the courts concluded that, where a prisoner was serving a life sentence, credit was to be afforded for the purpose of accelerating eligibility for parole consideration.

We conclude, therefore, that, when a prisoner is sentenced to a term of life imprisonment, he is entitled to

presentence detention credit, not against the life sentence itself, but toward the time he must await eligibility for parole.

The equal protection rationale compels the conclusion that Wilson is to be credited for his pretrial detention time against either his parole eligibility period for the first degree murder or for the expiration of the consecutive term of fifteen years for attempted robbery, but it does not necessarily compel that there be a separate credit applied to each of the two sentences.

In *Mitchell v. State,* 69 Wis.2d 695, 230 N.W.2d 884 (1975), we held that, where there were two concurrent sentences, the defendant was entitled to credit against both. Although the state in *Mitchell* argued that a presentence detention time credit against each of two concurrent sentences amounted to a double credit, it now concedes that the credit afforded against both sentences in *Mitchell* is compelled by equal protection. It asserts, however, that to give credit for pretrial detention time against each consecutive sentence constitutes a double credit and puts a poor person who is unable to post bail in a better position than a more affluent person who is able to remain at liberty on bail pending sentence.

The defendant in the instant case relies upon *Harris v. State,* 78 Wis.2d 357, 254 N.W.2d 291 (1977). In that case Harris was sentenced to serve four prison terms, three of them concurrent and the fourth consecutive to the first term. The state, in *Harris,* conceded that the defendant was entitled to a credit against each sentence. Because the issue was not raised in *Harris* and there was no disagreement between the parties in respect to the appropriateness of giving Harris credit against each sentence, including the consecutive sentence, this court ordered credit against all four sentences without further analysis. We are satisfied that the state's concession in *Harris* was inappropriate, and that the mandate of the court in respect to the consecutive sentence has no precedential value, because the issue was not before it and

because the court stated no rationale which would justify a credit against the consecutive sentence in addition to the credit given on the other sentences.

In *Klimas, supra,* we said:

"Whether bail, once set, can be posted is dependent on the defendant's financial ability, but this implicit discrimination between the rich and the poor is tolerable in light of the state's overriding need to produce all defendants, rich or poor, at trial. Once the trial has been held, however, and the defendant found guilty, that particular overriding need of the state which may impel confinement prior to trial is at an end. There is no constitutionally sufficient reason to permit the pre-trial discrimination on the basis of wealth to go unrectified, if it is at all possible to do so. The obvious method of rectifying the inequality is to credit the preconviction time in partial fulfillment of the sentence imposed upon conviction." (at 249)

It is apparent, therefore, that the rationale of this court is that a poor person who is convicted of a crime shall spend no more time in custody than a person in more affluent circumstances who makes bail. The goal of our rationale is equality. There is nothing in the constitution which would justify a longer term of incarceration for one who has the financial ability to post bail than for one who is unable to do so.

The state has filed with the court a table which demonstrates that the credit of the time in pretrial detention against each of two consecutive sentences would result in an indigent being freed from custody after serving less time than one who had been released on bail but who received the same consecutive sentences. The Public Defender acknowledged at oral argument that the situation posed in the state's exhibit is mathematically correct. We reproduce it herewith.[2]

---

[2] "Hypothetical Situation: Two defendants, A and B, are sentenced to two consecutive 15-year sentences. A had been financially

The Public Defender in his reply brief does not argue
that the state's exhibit does not conclusively demonstrate

able to make bail and spent no time in pretrial incarceration.
B was indigent and consequently had been incarcerated awaiting
trial for six months.

### Plaintiff in Error's Position

(Credit must be given on both sentences)

|  | Def. A | Def. B |
|---|---|---|
| Time spent in jail awaiting trial | 0 years 0 months | 0 years 6 months |
| Initial maximum sentence imposed (in case of indigent, credit given for period of pretrial incarceration) | 15 years 0 months | 14 years 6 months |
| Consecutive sentence (in case of indigent, credit again given for period of pretrial incarceration) | 15 years 0 months | 14 years 6 months |
| Total time spent in custody | 30 years 0 months | 29 years 6 months |

### Defendant in Error's Position

(Credit must be given only on first sentence)

|  | Def. A | Def. B |
|---|---|---|
| Time spent in jail awaiting trial | 0 years 0 months | 0 years 6 months |
| Initial maximum sentence imposed (in case of indigent, credit given for period of pretrial incarceration) | 15 years 0 months | 14 years 6 months |

that the "double credit"—the credit to be applied against each consecutive sentence—would operate to release an indigent earlier than one who made bail pending trial.

He does indeed attack the state's position on a due process ground, but we deem this an attack not upon the equal protection rationale for granting credit adopted by this court, but rather an attack upon the bail system itself. We addressed that question in *Klimas, supra,* at pages 248–49, but we also concluded that, so long as the bail system is thought necessary to assure the production of defendants at trial, inequalities of that system were to be rectified to the extent possible by an equal protection analysis which assured that a poor person be in custody for no longer than a rich person who made bail and received the same sentence.

Under the equal protection analysis adopted by this court, we conclude that the defendant should be granted credit against only one of his consecutive sentences. To hold otherwise would have the effect of penalizing a defendant who made bail.

A similar conclusion has been reached on the basis of equal protection in the cases of *State v. Salazar*, 24 Ariz. App. 472, 539 P.2d 946 (1975), and *Cox v. State,* 214 Kans. 652, 522 P.2d 173 (1974). These cases recognized, as we have, that the equal protection rationale requires no more than that a prisoner be given credit sufficient to reduce his total incarceration time to the amount of time which would have been served had he been on bail prior

| | | |
|---|---|---|
| Consecutive sentence (in case of indigent, credit not given for period of pretrial incarceration) | 15 years 0 months | 15 years 0 months |
| Total time spent in custody | 30 years 0 months | 30 years 0 months" |

to conviction and sentencing. Where consecutive sentences are imposed, credit against one of the sentences accomplishes that and affords equal protection.

*By the Court.*——Orders reversed and cause remanded for further proceedings consistent with this opinion.