BUCHANAN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 98.   Argued January 9, 1969.—Decided February 4, 1969.*
(Also reported in 164 N. W. 2d 253.)

462

For the plaintiff in error there was a brief and oral argument by *Ted E. Wedemeyer, Jr.,* of Milwaukee.

For the defendant in error the cause was argued by *Harold B. Jackson, Jr.,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

BEILFUSS, J. The defendant raises three issues:

(1) Was it a violation of due process of law to refuse to grant defendant's motion for a jury at the recommitment hearing?

(2) Was it a violation of equal protection of the law to refuse to grant defendant's motion for a jury at the recommitment hearing?

(3) Was the treatment given to defendant at the sex deviate facility a denial of equal protection of the law?

Statutes directly involved are:

"959.15 (13) CONTINUANCE OF CONTROL; ORDER AND APPLICATION FOR REVIEW BY THE COMMITTING COURT. If the department is of the opinion that discharge of a person from its control at the time provided in sub. (12) would be dangerous to the public for reasons set forth in sub. (14), it shall make an order directing that he remain subject to its control beyond that period; and shall make application to the committing court for a review of that order at least 90 days before the time of discharge stated.

"(14) ACTION OF COMMITTING COURT UPON APPLICATION FOR REVIEW; REASONS FOR CONTINUANCE OF CONTROL BY THE DEPARTMENT. (a) If the department applies to the committing court for the review of an order as provided in sub. (13), the court shall notify the person whose liberty is involved, and, if he be not sui juris, his parent or guardian as practicable, of the application, and

shall afford him opportunity to appear in court with counsel and of process to compel the attendance of witnesses and the production of evidence. He may have a doctor or psychiatrist of his own choosing examine him in the institution to which he is confined or at some suitable place designated by the department. If he is unable to provide his own counsel, the court shall appoint counsel to represent him. He shall not be entitled to a trial by jury.

"(b) If, after a hearing, the court finds that discharge from the control of the department of the person to whom the order applies would be dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality the court shall confirm the order. If the court finds that discharge from the control of the department would not be dangerous to the public for the causes stated, the court shall order that he be discharged from the control of the department at the time stated in the original commitment.

"(15) REVIEW BY COURT OF SUBSEQUENT ORDERS OF THE DEPARTMENT. (a) When an order of the department is confirmed as provided in sub. (14), the control of the department over the person shall continue, but unless he is previously discharged, the department shall within 5 years after the date of such confirmation make a new order and a new application for review thereof in accordance with this section. Such orders and applications may be repeated as often as in the opinion of the department it may be necessary for the protection of the public.

"(b) Every person shall be discharged from the control of the department at the termination of the periods stated in par. (a) of this subsection unless the department has previously acted therein as required, and shall be discharged if the court fails to confirm the order as provided in sub. (14).

"(c) During any such period of extended control, but not oftener than semiannually, the person may apply to the court for a re-examination of his mental condition and the court shall fix a time for hearing the same. The proceeding shall be as provided in sub. (14)."

The defendant is entitled to due process and equal protection of the laws in the determinations that he

constitutes a danger to the public and that the H&SS Department shall continue to maintain custody of him.

The United States Supreme Court, in reviewing the Colorado Sex Offenders Act in *Specht v. Patterson* (1967), 386 U. S. 605, 87 Sup. Ct. 1209, 18 L. Ed. 2d 326, stated:

"These commitment proceedings whether denominated civil or criminal are subject both to the Equal Protection Clause of the Fourteenth Amendment as we held in *Baxstrom v. Herold*, 383 U. S. 107, and to the Due Process Clause." (p. 608.)

In *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646, in considering whether the defendant was entitled to a hearing on the issue after the department had determined that a defendant was suffering from mental aberrations and in need of treatment as a sex deviate, we stated:

"We think due process does not end with conviction any more than it begins only with the commencement of the trial of the issue of guilt." (p. 526.)

The question here, then, is whether the defendant was denied due process or equal protection of the laws.

Undoubtedly the trial court denied the motion for a jury at a hearing because the statute, sec. 959.15 (14) (a) provides, in part: "He shall not be entitled to a trial by jury."

Our Sex Crimes Act (sec. 959.15, Stats.) in general provides that the one convicted of a specified sex crime must submit to a presentence examination by the department and if the department determines that he is in need of treatment for his mental or physical aberrations, the trial court must place the defendant on probation with the department with provision for treatment, or commit him to the department in such institution as it designates. The department cannot retain control over the defendant for a period beyond the time of the

maximum sentence that could have been imposed for the offense committed unless the department orders that his custody be retained because of its finding that his release would be dangerous to the public. The statute then provides that this order of the department, to be effective, must be reviewed and confirmed by the trial court after hearing. He can be retained for successive five-year periods under this procedure.

The statute (sec. 959.15 (14)) which provides for court review of the department's order before confirmation provides the following procedure for the benefit of the defendant: (1) He must be given notice of the hearing and its nature, (2) he shall have the right to counsel and at public expense if he is indigent, (3) he shall have the right to appear and of process to compel the attendance of witnesses and the production of evidence, and (4) he shall have the right to a doctor or psychiatrist of his own choosing to examine him. All of these rights were scrupulously acknowledged by the trial judge and extended to the defendant.

In support of his contention that he was denied due process, the defendant relies primarily upon two United States Supreme Court cases, *Specht v. Patterson, supra,* and *Duncan v. Louisiana* (1968), 391 U. S. 145, 88 Sup. Ct. 1444, 20 L. Ed. 2d 491; *United States ex rel. Gerchman v. Maroney* (3d Cir. 1966), 355 Fed. 2d 302, and a Wisconsin case, *Huebner v. State, supra.* He concludes that these cases expand the concept of due process to the state courts so as to require a jury trial at any hearing where a severe penalty may be imposed.

It is our opinion that none of these cases require a jury trial as an absolute necessity to due process in a hearing to determine whether the department may retain custody of a person found to be sexually deviated and dangerous to the public after a conviction of a sex crime under sec. 959.15, Stats.

The *Specht Case* dealt with the Colorado Sex Offenders Act. The defendant was convicted of a crime for which the maximum penalty was ten years. The Sex Offenders Act applies if the trial court is of the opinion that the person convicted of a specified sex offense "constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." This determination follows an examination and report by a state psychiatrist without any right for a hearing or confrontation of the psychiatrist by the offender. The offender can then be sentenced for an indeterminate term of from one day to life imprisonment. The court stated, at pages 609, 610:

"The Court of Appeals for the Third Circuit in speaking of a comparable Pennsylvania statute said:
" 'It is a separate criminal proceeding which may be invoked after conviction of one of the specified crimes. Petitioner therefore was entitled to a full judicial hearing before the magnified sentence was imposed. At such a hearing the requirements of due process cannot be satisfied by partial or niggardly procedural protections. A defendant in such a proceeding is entitled to the full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial, including the right to confront and cross-examine the witnesses against him.' *Gerchman v. Maroney*, 355 F. 2d 302, 312.
"We agree with that view. . . . Due process, in other words, requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And there must be findings adequate to make meaningful any appeal that is allowed. . . ."

All the requirements for due process as set forth in *Specht* are provided by sec. 959.15 (14), Stats., and were accorded the defendant in this instance. He was notified; counsel was appointed; the state assumed the burden to

prove the fact; he confronted and cross-examined the witness; a psychiatrist of his own choice examined him and testified in his behalf; he testified in his own behalf and adequate findings were made by the trial court.

In *Huebner v. State, supra,* we considered the first determination by the department directly after the finding of guilt. The statute did not provide for a hearing at that juncture but provided that the trial court must sentence the defendant under the Sex Crimes Act if the department found he was sexually deviated and recommended treatment. There was no provision for hearing or confrontation. This, we held, was not due process, but we did not require a jury trial, only a hearing before the court.

*Duncan v. Louisiana, supra,* held that the fourteenth amendment made the sixth amendment, which provides for jury trials in criminal matters, applicable to the states and held that a defendant charged with a crime which provided for a penalty of confinement up to two years was deprived of due process by a statute that did not permit a jury trial.

However, the court did state, at page 158:

"We would not assert, however, that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury. Thus we hold no constitutional doubts about the practices, common in both federal and state courts, of accepting waivers of jury trial and prosecuting petty crimes without extending a right to jury trial. However, the fact is that in most places more trials for serious crimes are to juries than to a court alone; a great many defendants prefer the judgment of a jury to that of a court."

The defendant argues that the length of potential sentence under the Sex Crimes Act is such that due process requires a jury trial.

*Duncan,* however, may be distinguished in two ways. First, the question there went to the right of a jury trial during the guilt determining process. And, second, as *Huebner* suggests, the procedure is not designed to determine the criminal punishment to be imposed but to determine whether treatment and the protection of the public is necessary. Thus, appellant's argument that the length of term or seriousness of other punishment is to be weighed to determine if a jury trial is necessary (*Duncan, supra*) can be overcome.

The defendant here was convicted of a sex crime. The hearing of which he now complains did not charge or find him guilty of any crime. The issues therein were (1) whether he had recovered from his mental aberrations, and (2) whether his release would constitute a danger to the public. All of the procedures that are really basic to a fair hearing were extended to the defendant. He did have notice and was present; he did have competent and diligent counsel; he did confront and cross-examine the witness; he did testify himself; he did offer testimony of a psychiatrist of his own choice; and meaningful and adequate findings were made. We believe the hearing procedures were fundamentally fair and adequate and that he was accorded due process.

The defendant next attacks the orders denying a jury and confirming the order to continue custody upon the constitutional ground that he was denied equal protection of the law.

He compares the involuntary commitment of a person declared to be mentally ill, infirm or mentally deficient under the Mental Health Act, ch. 51, Stats., wherein a jury is provided, with confinement under the Sex Deviate Act, sec. 959.15, which specifically states he is not entitled to a jury.

In *Huebner, supra,* we stated:

"While equal protection does not require all persons to be treated in the same manner, the distinction must

have some relevance to the purpose of the classification."

Is there a distinction between persons civilly adjudged to be mentally ill, infirm or mentally deficient and those found to be sexually deviated and in need of treatment and confinement; and if there is a distinction is it relevant to the purpose of classification?

It is our opinion there is a valid distinction relevant to the purpose of the classification and that the defendant was not denied equal protection of the laws by being denied a jury.

The purpose of the Mental Health Act is set forth in sec. 51.005 (1), Stats.:

"It is the purpose of this chapter to provide for care and treatment in state and county hospitals for persons who by reason of mental illness, infirmity or deficiency are in need of care and treatment not feasible in their own homes or in private facilities."

The purpose of the Sex Crimes Act is to protect the public from the commission of dangerous sex crimes and to provide treatment for the dangerous sex offender.[1]

The Mental Health Act provides that any person may be committed to a hospital upon the application of three adult residents, one of whom is a person with whom he resides or a parent, child, spouse, brother, sister, friend, sheriff, public official or public welfare or health officer, and subsequent examination by two physicians. A hearing before a court follows with a statutory right to demand a six-man jury.

There can be no confinement or even inquiry under the Sex Crimes Act unless the defendant has been convicted of a serious sex crime or a crime where sexual gratification is the motivation. It is only after conviction that an examination is conducted and hearing[2] had

---

[1] *See* 1954 Wis. L. Rev. 324, and *Huebner v. State, supra.*

[2] *See Huebner v. State, supra.*

before the court to determine whether the defendant suffers from a sexual deviation, is dangerous to the public and in need of specialized treatment. If these facts are found the defendant is confined for the protection of the public and for treatment instead of being sentenced for his criminal violation. His confinement is continued periodically if these conditions still exist. It is a continuation of the criminal process triggered by the defendant's violation and convictions.

There are several germane distinctions to the classification, as seen above—the most important is that a sexual deviate is confined because he is dangerous to the public, and the mentally ill, infirm or deficient person is confined primarily for his own benefit and treatment.[3]

The defendant claims he was denied specialized treatment as provided by sec. 959.15, Stats. The record reveals that the defendant was periodically examined as required by statute and that he did participate in and receive treatment from 1961 to 1963. After 1963, the defendant has either refused or neglected to take the treatment offered. The defendant cannot be heard to complain when he did not accept the treatment offered. In any event, it would seem that a writ of error from such proceedings would not be the appropriate remedy. The sole issue before the trial court was whether or not the defendant was dangerous to the public because of his mental aberrations. Even if the defendant had been denied treatment, that fact could not have affected the court's finding.

*By the Court.*—Orders affirmed.

---

[3] *Baxstrom v. Herold* (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. 2d 620, can be distinguished. There, a statutory procedure allowed the defendant, just prior to expiration of a penal sentence, to be civilly committed as mentally ill without a jury trial which was afforded to others civilly committed. Neither commitment on the criminal charge nor the character of the criminal act was necessarily related to mental illness.