John CALDWELL, Ronald Fisher, Kenneth Jaworski and Anthony Scifo, Plaintiffs-Respondents,

v.

Donald PERCY, Burton Wagner, Thomas Israel, James Powell and E.F. Schubert, Defendants-Appellants.†

Court of Appeals

*No. 80-1593. Argued April 30, 1981.—Decided October 23, 1981.*
(Also reported in 314 N.W.2d 135.)

† Petition to review denied.

For the defendants-appellants there was a brief by *Bronson C. La Follette*, attorney general, and *Robert D. Repasky*, assistant attorney general, and oral argument by *Robert D. Repasky*, assistant attorney general.

For the plaintiffs-respondents there was a brief by *Elizabeth Alexander*, assistant state public defender, and oral argument by *Elizabeth Alexander*, assistant state public defender.

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

DYKMAN, J. Plaintiffs in this class action have been committed to the department of health and social services (department) for specialized treatment under the

sex crimes law.[1] Plaintiffs allege that they have been transferred, or are in danger of being transferred, to a correctional institution for the sole purpose of confinement in violation of their right to treatment under the sex crimes law and of their rights under the mental health act.[2] Plaintiffs seek an injunction against such transfers, a declaration that their rights have been violated, and money damages.[3] The trial court certified the class and granted partial summary judgment. We reverse in part the grant of partial summary judgment and remand to the trial court for further proceedings.

The sex crimes law provides that certain sex offenders must, and other sex offenders may, be committed upon conviction to the department for a presentence social, physical and mental examination. Secs 975.01 and 975.-02, Stats. The department is required to report the results of the examination to the trial court with a recommendation for or against specialized treatment for the

---

[1] The sex crimes law was repealed by ch. 117, Laws of 1979, ch. 975, Stats., effective July 1, 1980. All statutory references in this opinion are to the 1977 statutes unless otherwise indicated.

[2] Sec. 51.61, Stats.

[3] We ordered the parties to brief the issue of whether this appeal was from a final order appealable as of right. A final order is one "which disposes of the entire matter in litigation as to one or more of the parties . . . ." Sec. 808.03(1), Stats. We conclude the order is nonfinal since damages have not been determined and no permanent injunction has been entered. Because the trial court has not "completed its adjudication of the rights of the parties in the action," the order is not final. *Thomas/Van Dyken Joint Venture v. Van Dyken*, 90 Wis. 2d 236, 242–43, 279 N.W.2d 459, 463 (1979). We conclude, however, that resolution of the issue on appeal will clarify further proceedings and materially advance the termination of the litigation. We therefore treat the notice of appeal as a petition for leave to appeal and order the petition granted. Sec. 808.03(2), Stats.

defendant's mental and physical aberrations. Sec. 975.04. If specialized treatment is recommended, the defendant is entitled to a hearing on the need for specialized treatment. If it is found that the defendant is in need of treatment or if he waives the hearing, the court must commit him to the department and either order him conveyed to a sex crimes law facility designated by the department or stay execution of the commitment and place the defendant on probation with the condition that he receive treatment in a manner prescribed by the court. Sec. 975.06. If the department does not recommend specialized treatment, the court may not commit the defendant to the department but must instead sentence him. Sec. 975.05; *Schmidt v. State,* 68 Wis. 2d 512, 228 N.W.2d 751 (1975).

Plaintiffs in this action were committed to the department for specialized treatment. They were sent to Central State Hospital (CSH) for that purpose. They allege that, apparently because they are considered untreatable or unwilling to accept treatment, they have been transferred or are in danger of being transferred to the Waupun Correctional Institution (WCI). They further allege that criticism of the treatment program may be interpreted as unwillingness to accept treatment. Plaintiffs claim that they do not receive treatment or receive inadequate treatment at WCI, and that the decision to transfer them there represents an abandonment of treatment. They also allege that their rights under sec. 51.61, Stats., apply to their confinement at WCI and that those rights are being violated.

Plaintiffs moved for partial summary judgment to establish that: (1) they have a statutory right to treatment under the sex crimes laws; (2) their transfer from a treatment facility to a prison, followed by incarceration indistinguishable from a penal sentence, violates

their statutory right to treatment; (3) their transfer could not legally deprive them of their rights guaranteed by sec. 51.61, Stats.

The trial court concluded that the department lacked statutory authority to transfer plaintiffs from CSH to WCI. The court entered judgment providing that persons committed under the sex crimes law may be transferred only from one treatment facility to another treatment facility as defined in sec. 51.01(15), Stats. The judgment further provided that the rights guaranteed by sec. 51.61, are not restricted by the operation of sec. 53.18.

We view the issues raised on appeal to be:

1. Does the sex crimes law provide plaintiffs with a statutory right to treatment?

2. Did the department have statutory authority to transfer plaintiffs from CSH to WCI?

3. Do the rights guaranteed by sec. 51.61, Stats., apply to committed sex offenders who are transferred to WCI?

The parties' dispute is centered on the correct interpretation of sec. 975.08, Stats. That statute provides in relevant part as follows:

(2) The department shall then arrange for [the committed person's] treatment in the institution best suited in its judgment to care for him. *It may transfer him to or from an institution to provide for him according to his needs and to protect the public.* The department may irrespective of his consent require participation by him in vocational, physical, educational and correctional training and activities; may require such modes of life and conduct as seem best adapted to fit him for return to full liberty without danger to the public; and may make use of other methods of treatment and any treatment conducive to the correction of the person and to the prevention of future violations of law by him.

(3) The department may make use of law enforcement, detention, parole, medical, psychiatric, psycholog-

ical, educational, *correctional*, segregative and other resources, institutions and agencies, public or private, within the state. The department may enter into agreements with public officials for separate care and special treatment (in existing institutions) of persons subject to the control of the department under this chapter. (Emphasis added.)

Plaintiffs argue that the sex crimes law creates a right to treatment and that transfers pursuant to sec. 975.08, Stats., may be made only for the purpose of providing treatment to committed persons. The trial court agreed with that position, and ruled that the statutes only allow transfer between treatment facilities.[4]

Defendants' argument is two-fold. They first contend that the department may transfer offenders to an institution for purposes other than treatment. They note that transfer to a correctional facility is specifically authorized by sub. (3) and argue that sub. (2) allows transfer "to or from an institution," including a correctional institution, within the department's discretion. Defendants agree that the sex crimes law contemplates some form of treatment at the onset of the commitment, but stress that the committed person's release is conditioned only on a determination that he is no longer dangerous, not on his cure or on the exhaustion of all possible treatments. Secs 975.13 and 975.14, Stats. Defendants contend that if in the department's opinion no further treatment is appropriate, the legislature has given it discretion to transfer committed persons to correctional institutions until they are no longer dangerous.

---

[4] A "treatment facility" is defined by sec. 51.01(19), Stats., as "any publicly or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs and rehabilitation programs."

Defendants' second argument is that even if it is required to provide treatment to all committed offenders during the entire term of their commitments, plaintiffs have not proved that it has failed in that duty.

A reasonably well-informed person could understand sec. 975.08, Stats., to permit transfer for any reason, or to allow transfer solely for the purpose of treatment. Because the statute can be understood in either of two senses, it is ambiguous. *Wirth v. Ehly,* 93 Wis. 2d 433, 441, 287 N.W.2d 140, 144 (1980). We may interpret an ambiguous statute by examining its language "in relation to the statute's context, scope, history, subject matter, and object intended to be accomplished." *Wisconsin Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis. 2d 438, 450, 291 N.W.2d 869, 875 (1980). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129, 135 (1980).

We begin our search for the legislature's intent by examining the language of the statute and of related statutes.

In construing a statute, the primary source is the language of the statute itself. The entire section and related sections are to be considered in its construction or interpretation. In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute. *White Hen Pantry v. Buttke,* 98 Wis. 2d 119, 122, 295 N.W.2d 763, 764 (Ct. App. 1980), *revd on other grounds,* 100 Wis. 2d 169, 301 N.W.2d 216 (1981) (citations omitted).

We also bear in mind the "cardinal rule" that we are to seek the purpose of the act as a whole and to favor a construction which gives effect to that purpose over a construction which defeats the manifest object of the

act. *Student Asso., U. of Wis.-Milw. v. Baum,* 74 Wis. 2d 283, 294–95, 246 N.W.2d 622, 627 (1976).

Application of these rules prevents us from adopting the defendants' position that sec. 975.08(3) is sufficient in itself to establish that the legislature intended to grant the department discretion to transfer committed sex offenders to a correctional institution for any purpose. The language of the statute as a whole indicates an intent to require the department to provide treatment to those committed to it. We must construe sub. (3) in light of sub. (2), which directs the department to "arrange for [the committed person's] *treatment* in the institution best suited in its judgment to *care for* him." (Emphasis added.) That subsection allows for transfers between institutions to provide for the committed person according to his needs. It further permits the department to make use of any methods of treatment conducive to the person's correction. The statute as a whole emphasizes the goal of treating the committed offender and is a strong indicator that the legislature intended that such offenders would be treated. The power to transfer between institutions facilitates that goal but may also be limited by it. We find nothing in the statute which suggests an intent to grant the department discretion not to treat a committed person.

Examination of other statutes which make up the sex crimes law further reveals a legislative intent to provide continuing treatment to the committed offender. Section 975.06, Stats., provides that a convicted defendant may be committed to the department only if it recommends specialized treatment for the defendant's mental or physical aberrations. The defendant is entitled to a hearing on the issue of his need for specialized treatment, and may be committed only if he is found to have such a need. A person who is found to have a need for special-

ized treatment may not receive probation unless his receipt of treatment is made a condition of probation. If the defendant needing treatment is not placed on probation, he must be committed to the department's custody. It is plain that the legislature intended that a commitment under sec. 975.06 is for the purpose of providing specialized treatment to the offender. Again, we discern no intent to permit the department to decide whether it will provide that treatment.

The statutes concerning an offender's release from the department's control are particularly instructive on the issue of legislative intent. The department retains control of the committed person so long as in its judgment such control is necessary for the protection of the public. The department must discharge the person as soon as there is a reasonable probability that he will no longer be a danger to the public. If the offender remains dangerous, the department may continue its control over him beyond the expiration of the maximum term to which he could have been sentenced for the offense for which he was committed. Although the committed person is entitled to periodic hearings on the question of his continued dangerousness, control over him is retained indefinitely provided he remains dangerous. Secs. 975.11 to 975.15, Stats.

Two sex offenders who commit identical crimes may thus, upon conviction, receive drastically different dispositions. An offender who is *sentenced* may receive an indeterminate term of, for instance, no more than ten years. That offender cannot be confined for longer than ten years unless he commits another offense. An offender who is *committed* to the department, however, is committed for a wholly indefinite time. His release is conditioned upon his reaching a state in which *"he is no longer in need of treatment* and a danger to the public."

*Milewski v. State,* 74 Wis. 2d 681, 690, 248 N.W.2d 70, 75 (1976) (emphasis added). Defendants claim the department has discretion to determine that such an offender is "untreatable" and to confine him indefinitely in a correctional institution under conditions identical to those faced by a sentenced inmate. The sentenced inmate, however, will be released by the end of his term, while the committed inmate will remain confined so long as he continues to be dangerous. It seems evident that the legislature did not intend the construction advanced by defendants. Rather, the statutes contemplate that the committed offender will receive treatment that may eventually allow him to return to society without danger to the public. *Milewski, supra* at 690, 248 N.W.2d at 75. We thus discern from the statutory scheme an intent to provide treatment to committed offenders, and to continue providing treatment until they may be safely released. We do not believe the legislature intended to condition a committed offender's release upon his reaching a point where he no longer needs treatment without further intending to require the department to treat him during his confinement so that he could reach that state.

There are serious constitutional difficulties with the defendants' view, as well. Challenges to the significantly different dispositions provided by a sentence under ch. 973, Stats., and a commitment under ch. 975 have been upheld against equal protection attacks based on the different purposes of the dispositions: the purpose of a commitment is treatment, while the purpose of a sentence is punishment. *Milewski, supra; Mitchell v. State,* 69 Wis. 2d 695, 230 N.W.2d 884 (1975). If a committed offender is confined to a correctional institution and receives no treatment, his position is indistinguishable from that of a sentenced offender save for one crucial fact: the sentenced offender will be released by the end of a fixed period of time, while the committed offender

is confined indefinitely. In such a situation, the distinction between punishment and treatment is nonexistent, and there seems to be no justification for conditioning the release of the offenders on such radically different events—the expiration of time versus a change in behavior or personality. In view of the rule that we have a duty to interpret statutes in a way that renders them constitutional whenever possible, *State v. Dronso,* 90 Wis. 2d 110, 115, 279 N.W.2d 710, 713 (Ct. App. 1979), we are further persuaded that the statute must be construed to require the department to provide specialized treatment to committed sex offenders during the duration of their commitments.[5]

The legislative history of the sex crimes law provides further evidence of an intent to provide continuing treatment to persons committed to the department. The law was the result of a lengthy study by a special citizens' advisory committee to the state board of public welfare.[6]

---

[5] Section 975.17, Stats. (1979), gives persons committed pursuant to the sex crimes law the option to petition the committing court for sentencing under ch. 973. That section does not affect this case since plaintiffs are not seeking to be resentenced. *State v. Machner,* 101 Wis. 2d 79, 80, n. 1, 303 N.W.2d 633, 634 (1981). It may, however, have an impact on an equal protection analysis, since committed persons now have the right to receive the same disposition as those who are sentenced. The enactment of this statute, effective July 1, 1980, does not, however, change our opinion that the legislature did not intend to permit the department to confine committed persons in prisons until they were no longer dangerous without providing treatment geared toward facilitating their release. If anything, we agree with the trial court that sec. 975.17 (1979) indicates a continuing legislative intent to require the department to provide treatment to committed persons. If the legislature wanted to give the department discretion not to treat a particular person, it would likely have given the department the same right as the committed person to petition the court to sentence that person under ch. 973.

[6] Letter from John Tramburg, Director, State Dept. of Public Welfare, to Hon. Robert Robinson and Hon. Holger Rasmusen,

The citizens committee indicated that the underlying goal of the proposed law was to rehabilitate the offender through treatment. The committee recognized as a second purpose the protection of society from dangerous sex offenders.[7] The same two purposes—to protect society and to provide treatment to the offender so that he would no longer be dangerous—were recognized in a report by the director of the state department of public welfare shortly after the law was enacted.[8]

There is no indication in the legislative history of the sex crimes law that the legislature considered that some committed offenders would be untreatable or would not be entitled to treatment. Rather, the philosophy of the act appears to be that all committed persons should be treated until they are no longer dangerous and then released. The legislature thus made an implied determination that all committed offenders should be treated until they are rehabilitated.

Strong support for this view of the legislative history is found in a Wisconsin Legislative Council report that indicates one cause of the repeal of the sex crimes law was that "sex crime offenders were recommended for treatment if they were considered *dangerous,* regardless of whether they would benefit from psychiatric treatment. Thus, dangerous but untreatable persons were committed to the program."[9] Having seen the law in action for many years, the legislature apparently determined that its efficacy was hampered because it demanded that untreatable persons receive treatment. It

dated April 26, 1951, on file in drafting record for ch. 542, Laws of 1951, Legislative Reference Bureau.

[7] *See* Comment, *Criteria for Commitment under the Wisconsin Sex Crimes Act,* 1967 Wis. L. Rev. 980, 984, 985.

[8] *See* Note, *Criminal Law—Wisconsin's Sexual Deviate Act,* 1954 Wis. L. Rev. 324, 325 n. 15 and accompanying text.

[9] Wis. Legislative Council, *Sexual Assault: A Background Report* (Staff Brief 80–21, October 3, 1980) (emphasis in original).

is not our role to determine whether the law was effective.[10] We note only that the legislature's determination that the law was ineffective because it required treatment of untreatable persons supports the position that the legislature, prior to its decision to repeal the law, had intended that all persons committed to the program are entitled to receive treatment.

Another cause of the repeal of the sex crimes law was a shift in the legislature's philosophy from rehabilitation, which was regarded as ineffective, to punishment. The legislature was also aware that the persons administering the law had expressed doubt as to the wisdom or workability of mandatory treatment. Comment, *Repeal of the Wisconsin Sex Crimes Act*, 1980 Wis. L. Rev. 941, 942. While the legislature therefore considered the law unworkable and unwise at the time of its repeal because of its insistence on treatment toward the end of rehabilitation, it is apparent that in enacting the law the legislature believed such treatment would be effective and should be required. The fact that the legislature later believed differently on the evidence then before it underscores and does not alter its original intent as to how the law was to operate.

Precedent further establishes that the aim of the sex crimes law was to provide rehabilitative treatment to all persons committed under it. The dual purpose of the law —protection of society and rehabilitation of the offender—has long been recognized by the supreme court. *State v. Hungerford*, 84 Wis. 2d 236, 245, 267 N.W.2d 258, 263 (1978) ; *State ex rel. Copas v. Burke*, 28 Wis. 2d 188, 192, 136 N.W.2d 778, 780 (1965). The court has also recognized that a sentence and a commitment are significantly different statutory creatures. The court in *Huebner v. State*, 33 Wis. 2d 505, 526, 147 N.W.2d 646,

[10] *Milewski v. State*, 74 Wis. 2d 681, 691, 248 N.W.2d 70, 75–76 (1976).

656 (1967), held that a commitment was "so essentially different from penal sentencing as to amount to an independent proceeding which determines . . . important rights of the defendant unrelated to the determination of guilt . . . ." Although both a sentence and a sex crimes commitment have as a common goal the protection of society through the confinement of the offender, the "pervading theme" of the sex crimes law is the coupling of that protection with treatment of the offender. *State ex rel. Farrell v. Stovall,* 59 Wis. 2d 148, 162, 207 N.W.2d 809, 815 (1973).

The commitment thus serves a different purpose than does a sentence. A sentence is intended (at least in part) to punish the offender, while a commitment focuses upon rehabilitation and treatment. A commitment lacks the punitive purpose of a sentence. *State v. Machner,* 101 Wis. 2d 79, 85, 303 N.W.2d 633, 637 (1981) and cases cited therein; Note, *Criminal Law—Wisconsin's Sexual Deviant Act,* 1954 Wis. L. Rev. 324, 334. Nor is a commitment "the equivalent of being penally sentenced for the maximum time provided by law for the crime plus a requirement for medical treatment. The Sex Crimes Act is not predicated on any such theory. It forbids a penal sentence where treatment is recommended by the department and commands a commitment for mandatory treatment . . . ." *Huebner,* 33 Wis. 2d at 526, 147 N.W.2d at 656.

Although the sex crimes law is not intended to punish those committed to the department, it does so if the department may incarcerate committed offenders in a correctional institution without treatment. Detention alone is "nothing less than punishment in that it deprive[s] the defendant of his liberty." *Milewski,* 74 Wis. 2d at 689, 248 N.W.2d at 74. In light of the supreme court's long recognition that the purpose of the sex crimes law is to protect society not by punishing the committed of-

fender but by treating and rehabilitating him, we cannot interpret the law to allow the department to circumvent that purpose by confining a committed offender in a correctional institution with no treatment and under circumstances which render the offender's deprivation of liberty indistinguishable from a penal sentence.

The attorney general has stated that the purpose of the sex crimes law "would not be fully achieved if a person found to be afflicted with mental aberrations were to be subject to ordinary imprisonment . . . ." 49 Op. Att'y Gen. 64, 68 (1960).

The supreme court has specifically held that the sex crimes law contemplates "the 'treatability' of the individual and an element of dangerousness to the public or himself if left untreated." *Farrell, supra* at 160, 207 N.W.2d at 814. The department's criteria for determining which offenders to recommend for treatment are designed to allow commitment of only those offenders who are treatable or will respond to treatment.[11] *Schmidt v. State,* 68 Wis. 2d 512, 515, 228 N.W.2d 751, 753 (1975). It may well be that the department occasionally errs and recommends treatment for an untreatable offender, or that an offender becomes untreatable[12] or has gained the

[11] At the time of the law's repeal, the department recommended treatment for only about 20 to 30 percent of the offenders it examined. Comment, *Repeal of the Wisconsin Sex Crimes Act,* 1980 Wis. L. Rev. 941, 946 n. 35.

[12] The department transfers some committed persons to WCI because they do not want to participate in treatment. We note that sec. 975.08(2), Stats., authorizes the department to require a committed person to participate in treatment irrespective of his consent. The department's position is that attempts at treatment are worthless if the offender does not want to participate in them. We therefore regard persons who do not wish to participate in a treatment program as "untreatable" for the purpose of this opinion.

We also recognize that the word "untreatable" may sometimes be a misnomer. At least one commentator has stated that "lack

maximum possible benefit from treatment during his commitment. If such an offender remains dangerous and thus cannot be released, the department is placed in a difficult position: further treatment may be futile, yet treatment is required by the statute, just as confinement of a punitive nature is forbidden.

An analogous situation was considered in *State v. Machner, supra.* Machner had been committed to the department for treatment but was subsequently determined not to be a sex deviate and therefore not a proper candidate for treatment. Accordingly, the department transferred him to WCI. Machner filed a petition for relief challenging his transfer. The circuit court determined that, because Machner was not a sexual deviate, the department's initial recommendation for treatment had been erroneous. The court therefore vacated Machner's commitment and remanded him to the court for sentencing.

On appeal, the supreme court stated that when a trial court's action under the sex crimes law is reviewed, the court's authority must be "narrowly construed" within "statutorily authorized limits." *Machner,* 101 Wis. 2d at 84, 303 N.W.2d at 636. The court noted that a trial court has no inherent authority to vacate a sex crimes commitment, and reasoned that if such authority exists, it must derive from the statutes. *Id.* at 82, 303 N.W.2d at 635. The court concluded that the statutes granted the court no such authority. In reaching this conclusion, the court stated:

We understand the trial court's dilemma, since *it is clear that Chapter 975 did not provide for the situation which occurred here—an error in the initial depart-*

of understanding of a particular character disorder does not mean that it is untreatable." Comment, *Criteria for Commitment Under the Wisconsin Sex Crimes Act,* 1967 Wis. L. Rev. 980, 986.

*mental evaluation giving rise to a commitment.* Obviously, the court was reluctant to permit the offender to continue under the Chapter 975 commitment when the department had now concluded he was not a sex deviate, yet understandably the court was unwilling to discharge him, since he was still considered to be dangerous and in need of confinement. Despite this concern, and despite the fact that we do not view the court's action as contrary to public policy, *we are constrained to follow the terms of the Sex Crimes Act. Machner,* 101 Wis. 2d at 86, 303 N.W.2d at 637 (emphasis added).

The court therefore vacated the circuit court's order vacating the commitment. The court did not address the issue presented in this case—whether the committed person could be transferred to WCI and offered no treatment there.

The court's decision in *Machner* convinces us that the department has no authority to transfer committed persons to a non-treating correctional institution. As stated in *Machner,* the statutes do not provide a procedure to follow when the department erroneously determines that an individual is treatable and thus recommends him for treatment, or when the committed individual becomes untreatable. Yet just as in *Machner,* we are constrained to follow the terms of the sex crimes law, and that law requires that committed persons receive treatment until they can be safely discharged.

We therefore hold that the sex crimes law provides a right to treatment to all persons committed under it. The department accordingly has no authority to transfer a committed person to a correctional institution where he will receive no treatment under conditions which are indistinguishable from a punitive sentence.

Although we agree with plaintiffs that they may not be transferred to WCI for the sole purpose of confinement, we must reverse the trial court's grant of partial

summary judgment. The sex crimes act does not prevent the department from transferring committed persons to WCI if they are sent there for specialized treatment or as part of a program of such treatment. Section 975.08(3), Stats., specifically authorizes transfers to correctional institutions.[13] The department's treatment program was in fact housed in WCI for nearly 20 years and was only moved to CSH in 1970. Comment, *Repeal of the Wisconsin Sex Crimes Act,* 1980 Wis. L. Rev. 941, 947–49. We therefore find no difficulty with the act of transferring committed persons to WCI for treatment; it is only when they are given no treatment that their confinement becomes indistinguishable from a punitive sentence and therefore unauthorized by the law.[14]

Defendant has not contended the plaintiffs' complaint fails to state a claim. Our review therefore focuses on the issue of whether the materials submitted in support

---

[13] Section 1825w of 1981 Assembly Bill 66 provides:

975.08(2) of the statutes is amended to read:

975.08(2) The department shall then arrange for his treatment in the institution best suited in its judgment to care for him. It may transfer him to or from any institution, *including any correctional institution listed under s. 53.01,* to provide for him *according to his needs* and to protect the public. The department may irrespective of his consent require participation by him in vocational, physical, educational and correctional training and activities; may require such modes of life and conduct as seem best adapted to fit him for return to full liberty without danger to the public; and may make use of other methods of treatment and any treatment conducive to the correction of the person and to the prevention of future violations of law by him.

This amendment to sec. 975.08(2), Stats., makes it clear that the department may transfer plaintiffs to WCI. It does not address the question involved in this appeal; whether plaintiffs must be treated after transfer.

[14] The trial court held that transfers are limited to transfers between treatment facilities as that term is defined in sec. 51.01 (15), Stats. That holding is directly contradicted by the language of sec. 975.08(3), which specifically permits transfers to correctional institutions.

of and against the motion for summary judgment demonstrate that there is no genuine issue of material fact which would warrant a trial. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d at 762, 300 N.W.2d at 70, citing *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980).

In support of its motion for partial summary judgment, plaintiffs submitted general information regarding the treatment programs at WCI and CSH. That information shows that individual psychotherapy is generally unavailable at WCI except on an emergency basis. Group psychotherapy is available for residents, although there is a waiting list and it is apparently not offered to all inmates. Specialized groups for sex offenders are not presently available. CHS and other treatment facilities offer programs geared toward specific problems faced by the sex offender, although they also rely primarily on group, rather than individual, psychotherapy. None of the general information supplied by plaintiffs showed that they specifically were unable to receive reasonably adequate specialized treatment because of their transfer to WCI.

An affidavit supplied by defendants in opposition to the summary judgment motion states that sex offenders at WCI have available group therapy, and to a very limited extent, individual therapy. The affidavit states that one of the plaintiffs in this action has been engaged in both individual therapy and marital therapy at WCI, while another is involved in a school program and in a group therapy program.[15]

Resolving all reasonable doubts against plaintiffs, we hold that whether WCI provides plaintiffs with the spe-

---

[15] Individual therapy, marital counseling, and traditional group therapy are all parts of the specialized treatment program offered for sex offenders at CSH.

cialized treatment mandated by the sex crimes act is a genuine and disputed issue of material fact. The trial court therefore erred in entering judgment to the effect that the department lacked the statutory authority to transfer the named plaintiffs to WCI. Authority for that transfer did exist, provided the plaintiffs receive specialized treatment at WCI. Whether such treatment is provided is an unresolved question of fact, making summary judgment inappropriate.

Plaintiffs contend that the rights guaranteed to patients of mental health institutes by sec. 51.61, Stats., apply to them during their confinement at WCI and that those rights were infringed. Section 51.61(1) states in relevant part as follows:

(1) In this section, "patient" means any individual who is receiving services for mental illness, developmental disabilities, alcoholism or drug dependency, *including any individual who is* admitted to a treatment facility in accordance with this chapter or under ch. 55 or who is detained, *committed* or placed *under* this chapter or ch. 55, 971 or *975* . . . . (emphasis added).

The statute then lists several rights which must be accorded to patients.

Plaintiffs alleged in their complaint that several of the rights guaranteed under sec. 51.61, Stats., have been violated during their confinement in WCI. Defendants' answer admitted the violation of most of those rights. The trial court entered partial summary judgment in the nature of a declaratory judgment declaring that the rights guaranteed by sec. 51.61 apply to persons committed under the sex crimes law. The question raised is one of law and was properly resolvable by summary judgment.

Defendants rely on sec. 53.18(5), Stats., in their argument that sec. 51.61 does not apply to committed sex

offenders who are transferred to correctional institutions. Section 53.18(5) provides:

> Any person who is legally transferred by the department to a penal institution shall be subject to the same statutes, regulations and discipline as if he had been originally sentenced to that institution, but the transfer shall not change the term of sentence.

Section 51.61 makes no exception for patients transferred to penal institutions.

When two statutes are in conflict, it is our duty to harmonize them. "When harmonizing inconsistent statutes, the specific governs the general and the later in time governs the earlier in time." *State v. Kruse,* 101 Wis. 2d 387, 393, 305 N.W.2d 85, 88 (1981). Section 53.18(5), Stats., applies generally to any transferee to a penal institution. Section 51.61 applies specifically to persons committed under the sex crimes law. If the specific is to govern the general, sec. 51.61 must prevail over sec. 53.18(5). Section 53.18(5) was enacted by ch. 519, Laws of 1947, and has not been amended since that time. Section 51.61 was created by ch. 430, Laws of 1975, and was amended by sec. 96, ch. 428, Laws of 1977 to apply to persons committed under the sex crimes law. The most recent expression of legislative intent is therefore to apply sec. 51.61 to plaintiffs. We thus conclude that sec. 53.18(5) is inapplicable to these facts.

Our conclusion that sec. 51.61, Stats., controls over sec. 53.18(5) is supported by the policy underlying the sex crimes law. Persons committed under that law are entitled to treatment rather than punishment. The rights guaranteed by sec. 51.61 lessen the punitive nature of confinement. Regardless whether plaintiffs receive treatment at a treatment facility or in a program at a correctional institution, the purpose of the law requires that they receive treatment in a non-punitive atmosphere.

*By the Court.*—Modified and, as modified, affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

GARTZKE, P.J. (concurring). I agree with the majority that persons committed under ch. 975, Stats., may be transferred to a correctional institution.

The additional consequence of the majority opinion is that all persons committed under ch. 975, Stats., whether or not they are treatable or have rejected treatment or should never have been committed, must somehow be treated after their transfer to a correctional institution. I do not accept that construction of sec. 975.08.

It is possible that a person committed under ch. 975, Stats., will prove to be untreatable or to have reached the point where further treatment is not possible. Defendants contend that certain plaintiffs have rejected treatment. A person may be committed by mistake. The latter possibility is real. In *State v. Machner,* 101 Wis. 2d 79, 303 N.W.2d 633 (1981), the department learned after the commitment that the person involved was not sexually deviated and was not a proper candidate for treatment in a sex crimes program, and therefore transferred that person to Waupun Correctional Institute.

We are to reach a reasonable construction of an ambiguous statute and reject an unreasonable interpretation. *Falkner v. Northern States Power Co.,* 75 Wis. 2d 116, 124, 248 N.W.2d 885, 890 (1977); *Volunteers of America v. Industrial Comm.,* 30 Wis. 2d 607, 616–17, 141 N.W.2d 890, 894–95 (1966); C. Sands, 2A *Sutherland's Statutory Construction* sec. 45.12 at 37 (4th ed. 1973).

It is unreasonable to contemplate treatment of a person who is untreatable. It is absurd to treat a person who should never have been committed in the first place. If a committed person has rejected treatment, that per-

son cannot complain that he has been transferred to a correctional institution where treatment is unavailable. *Buchanan v. State,* 41 Wis. 2d 460, 472, 164 N.W.2d 253, 259 (1969) ; *see also Burbey v. Burke,* 295 F. Supp. 1045, 1049–50 (E.D. Wis. 1969) (petitioner who rejects or fails to attend treatment programs cannot complain of lack of treatment).

Accordingly, I would agree that a person who is treatable and wants treatment is entitled to treatment under ch. 975, Stats. That person cannot be transferred to a correctional institution which does not provide treatment. If the person has rejected treatment, I would hold that the person can be transferred to a correctional institution where treatment is unavailable. If the person is untreatable, I would hold that the fact that no treatment facilities exist at the correctional institution is immaterial. And I certainly would hold that if the person was committed by mistake, it is immaterial that no treatment facilities exist at the correctional institution. I would remand for factual findings as to whether the plaintiffs are treatable or have rejected treatment, as well as whether the correctional institution provides treatment.

The majority suggests that a question of equal protection is involved if a person committed for treatment is transferred to a correctional institution which does not provide treatment. The question arises because a sex deviate who commits a sex crime is classified differently from the nondeviate who has committed a sex crime. The constitutional issue is not directly before us. It may be insubstantial. Section 975.17, Stats., provides that a person committed under ch. 975 may petition the committing court for resentencing and will be given credit for time served pursuant to commitment under ch. 975. Thus, the person who has been committed can voluntarily move from one classification to another and avoid the impact of what may be a disparate classification.