IN the MATTER OF R.J., Alleged to be Mentally
Ill: R.J., Appellant,

v.

WINNEBAGO COUNTY, Respondent.

Court of Appeals

*No. 88-0682. Submitted on briefs July 14, 1988.—Decided
September 14, 1988.*

(Also reported in 431 N.W.2d 708.)

On behalf of the appellant, the cause was submitted on the brief of *Leonard D. Kachinsky* of *Kachinsky and Peppard* of Neenah.

On behalf of the respondent, the cause was submitted on the brief of *Robert A. Anderson,* assistant district attorney Winnebago county.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   In a mental commitment hearing alleging that an individual's act or threat raised a reasonable fear of harm to other persons, the issue is whether that other person or persons must be aware of the act or threat. We conclude that that statute does not so require and affirm.[1]

The facts are that R.J.'s treatment director filed a petition requesting involuntary commitment because she was alleged to suffer schizophrenia, paranoid type; that she was dangerous because of threats of physical harm to others; and that treatment could help her. At the final hearing, two court-appointed physicians testified that they thought R.J. was dangerous because she made a threat to stab and kill an emergency room nurse. The threat was not made to that nurse directly but to other hospital personnel. The threat was duly recorded and made part of R.J.'s hospital record. Following presentation of the county's case, R.J.

---

[1]Pursuant to this court's order of May 2, 1988, and a presubmission conference, the parties have submitted memorandum briefs under the voluntary expedited appeals system. Because the issue in this case is one of first impression, the chief judge ordered that this case be made a three-judge case and the case was moved to the regular calendar.

moved to dismiss, claiming that a finding of dangerousness under sec. 51.20(1)(a)2.b, Stats., requires that a threat to do serious physical harm must be made in the presence of the person threatened. The trial court rejected R.J.'s argument and committed her. R.J. appeals and raises the same argument.

Section 51.20, Stats., states in relevant part:[2]

(1) PETITION FOR EXAMINATION. (a) Except as provided in pars. (ab), (am) and (ar), every written petition for examination shall allege that the subject individual to be examined:

1. Is mentally ill ... and

2. Is dangerous because the individual:

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats or attempts at suicide or serious bodily harm;

b. *Evidences a substantial probability of physical harm to other individuals as manifested by* evidence of recent homicidal, or other violent behavior, or by *evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them,* as evidenced by a recent overt act, attempt or threat to do serious physical harm. ...

c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself. ... [Emphasis added.]

This court disagrees with R.J.'s construction of the statute. We first observe that construction of a

[2]Section 51.20, Stats., was amended effective May 2, 1988, by 1987 Wis. Acts 366 and 394. All references to sec. 51.20 are to the version as it existed prior to amendment.

statute is a question of law. *Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 218, 397 N.W.2d 124, 126 (Ct. App. 1986). We decide questions of law *de novo. See id.*

In construing a statute, the primary source is the language of the statute itself. *Caldwell v. Percy,* 105 Wis. 2d 354, 361, 314 N.W.2d 135, 140 (Ct. App. 1981). The entire section and related sections are to be considered in its construction or interpretation. In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute. *Id.*

We begin our interpretation, therefore, by reviewing sec. 51.20, Stats., as a whole rather than the specific clause that is in dispute. The manifest object of sec. 51.20 is treatment for those who are mentally ill and dangerous to themselves or others. *See* sec. 51.001(1), Stats.[3] The scope of sec. 51.20(1)(a)2.b includes an evidentiary scheme for finding dangerousness. The statute contains a requirement that a finding be "evidenced by a recent overt act, attempt or threat to do serious physical harm." *Id.*

It is the obvious intent of the legislature, therefore, that we should concern ourselves with the acts

---

[3]Section 51.001(1), Stats., states:

It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care.

and mental state of the "subject individual to be examined."

R.J. attempts, however, to persuade us that the legislature is equally concerned about the mental state of those who are not the "subject individual to be examined." She isolates the following clause relating to evidence necessary for a finding of dangerousness. That clause reads that dangerousness can be found by "evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them."

R.J. argues that "them" references only the individuals threatened. Thus, for a threat to constitute sufficient evidence of dangerousness, the subjects of the threat must be present or otherwise be made aware of the threat in order that they be in "reasonable fear" of it. R.J. concludes that fears by bystanders of harm to others are not contemplated by the statute.

R.J. asserts that the evidence adduced was insufficient because the emergency room nurse was not present when the threat was made, and there is no evidence that she was aware of it. We acknowledge that such a reading is possible.

However, there is another way to read the clause—a way in keeping with the legislature's intent to focus upon the mental state of the subject to be examined, not those who may be affected by the subject individual's behavior.

We observe that "other individuals" and "others" referenced in the statute are those existing apart from the "subject individual to be examined." "Others" is a general pronoun used in the statute here; the word identifies that great mass of humankind exclusive of the subject individual to be examined.

██

We therefore read the clause mandating "evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them" as meaning the following: When a member of that class of people defined as "others" observes a person or persons within the class being placed in danger by actions or threats of the "subject individual," then that class member is in reasonable fear for members of the class.

The prepositional phrase "to them" refers back to and exactly echoes its antecedent, "others." Hence, the clauses are concerned with danger to everyone but the subject "himself or herself." *See* sec. 51.20(1)(a)2.a, Stats.

██

To construe the statute as R.J. requests would lead to an absurd result. It would place the focus not upon the disturbed person's acts but upon the effects of the acts. The evidence required would focus upon the subjective feelings of the threatened individual, not upon the objective acts of the disturbed person. R.J.'s reading would inevitably defeat the statute's purpose. No commitment could result from threats directed at those too young, too emotionally undeveloped or too foolish to reasonably fear another. Nor could commitment result from menacing gestures made behind the back of a blind man, or from threats hurled into the wind. We reject a statutory interpretation that leads to absurd results and manifestly defeats the purpose of the statute: adequate treatment for those who are mentally ill and who pose a danger to others.

We conclude that a showing can be made that others are placed in a fearsome position by a disturbed person's actions even if the person placed in that position has no subjective awareness of it.

R.J. also argues that the evidence of the threat made to a third person was not enough to engender reasonable fear of harm. R.J. concludes that the threat was merely offensive. This court disagrees. R.J.'s delusions were such that she thought the nurse to be having an affair with her husband and also with an emergency room doctor whom R.J. considered to be "hers." She not only threatened to stab or kill the nurse but was quite graphic in describing how she would cut the nurse and where. The fact that R.J. worked at the same hospital as the nurse would create a reasonable fear by hospital personnel of harm to that nurse. There was overwhelming evidence to support the finding of dangerousness to others. This court affirms.

*By the Court.*—Order affirmed.